**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------

SHIVA STEIN,                                              :
                                                         :
       Plaintiff,                   :     Civil Action No. _____
                                                         :
v.                                                       :
                                                         :     **COMPLAINT FOR VIOLATIONS OF**
TIFFANY & CO., ROGER N. FARAH,                           :     **SECTIONS 14(a) AND 20(a) OF THE**
ALESSANDRO BOGLIOLO, ROSE MARIE                          :     **SECURITIES EXCHANGE ACT OF**
BRAVO CBE, HAFIZE GAYE ERKAN,                            :     **1934**
JANE HERTZMARK HUDIS, ABBY F.                            :
KOHNSTAMM, JAMES E. LILLIE,                              :     **JURY TRIAL DEMANDED**
WILLIAM A. SHUTZER, ROBERT S.                            :
SINGER, AND ANNIE YOUNG-SCRIVNER,                        :
                                                         :
       Defendants.                 :
---------------------------------------------------------

      Shiva Stein ("Plaintiff"), by and through her attorneys, alleges the following upon

information and belief, including investigation of counsel and review of publicly-available

information, except as to those allegations pertaining to Plaintiff, which are alleged upon

personal knowledge:

      1.     This is an action brought by Plaintiff against Tiffany, Inc. ("Tiffany or the

"Company"), and the members Tiffany's board of directors (the "Board" or the "Individual

Defendants" and collectively with the Company, the "Defendants") for their violations of

Section 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C.

§§ 78n(a), 78t(a),  and SEC Rule 14a-9, 17 C.F.R. 240.14a-9 and 17 C.F.R. § 244.100, in

connection with the proposed merger between Tiffany and affiliates of by LVMH Moët

Hennessy-Louis Vuitton SE ("LVMH"), a *societas Europaea* (a French corporation).

      2.     Defendants have violated the above-referenced Sections of the Exchange Act by

causing a materially incomplete and misleading Proxy Statement on Schedule 14A (the "Proxy

Statement") to be filed on December 18, 2019 with the United States Securities and Exchange Commission ("SEC") and disseminated to Company stockholders.   The Proxy Statement recommends that Company stockholders vote in favor of a proposed transaction whereby Breakfast Holdings Acquisition Corp., a Delaware corporation and an direct wholly owned subsidiary of LVMH ("Merger Sub") will merge with and into the Company, resulting with the Company surviving the merger and becoming a wholly owned indirect subsidiary of LVMH (the "Proposed Transaction"). Pursuant to the terms of the definitive agreement and plan of merger the companies entered into (the "Merger Agreement") each Tiffany common share issued and outstanding will be converted into the right to receive $135.00 per share in cash (the "Merger Consideration").

3.      As discussed below, Defendants have asked Tiffany's stockholders to support the Proposed Transaction based upon the materially incomplete and misleading representations and information contained in the Proxy Statement, in violation of Sections 14(a) and 20(a) of the Exchange Act.  Specifically, the Proxy Statement contains materially incomplete and misleading information concerning the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.   The financial projections were also utilized by the financial advisors of the Company, Centerview Partners LLC ("Centerview") and Goldman Sachs & Co. LLC, in conducting the valuation analyses in support of their fairness opinions. The Proxy Statement also omitted material information with respect with its analyses performed to reach the fairness opinions from the financial advisors and information with respect to the sales process.

4.     It is imperative that the material information that has been omitted from the Proxy Statement is disclosed to the Company's stockholders prior to the forthcoming stockholder vote so that they can properly exercise their corporate suffrage rights.

5.     For these reasons and as set forth in detail herein, Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to Tiffany's stockholders or, in the event the Proposed Transaction is consummated, to recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9.

7.     Personal jurisdiction exists over each Defendant either because the Defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

8.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because the Company is headquartered in this District.

## PARTIES

9.     Plaintiff is, and has been at all relevant times, the owner of Tiffany common stock and has held such stock since prior to the wrongs complained of herein.

10.    Individual Defendant Roger N. Farah has served as a member of the Board since 2017 and is the Chairman of the Board.

11.    Individual Defendant Alessandro Bogliolo has served as a member of the Board and the Company's Chief Executive Officer since 2017.

12.    Individual Defendant Rose Marie Bravo CBE has served as a member of the Board since 1997.

13.    Individual Defendant Hafize Gaye Erkan has served as a member of the Board since 2019.

14.    Individual Defendant Jane Hertzmark Hudis has served as a member of the Board since 2019.

15.    Individual Defendant Abby F. Kohnstamm has served as a member of the Board since 2001.

16.    Individual Defendant James E. Lillie has served as a member of the Board since 2017.

17.    Individual Defendant Guillermo Marmol has served as a member of the Board since February 2016.

18.    Individual Defendant William A. Shutzer has served as a member of the Board since 1984.

19.    Individual Defendant Robert S. Singer has served as a member of the Board since 2012.

20.    Individual Defendant Annie Young-Scrivner has served as a member of the Board since 2018.

21.     Defendant Tiffany is incorporated in Delaware and maintains its principal offices at 200 Fifth Avenue, New York, NY 10010.  The Company's common stock trades on the New York Stock Exchange under the symbol "TIF."

22.     The defendants identified in paragraphs 10-20 are collectively referred to as the "Individual Defendants" or the "Board."

23.     The defendants identified in paragraphs 10-21 are collectively referred to as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

A.     **The Proposed Transaction**

24.     Tiffany is a holding company which engages in product design, manufacturing, and retailing through its subsidiaries. The firm also sells timepieces, leather goods, sterling silver goods, china, crystal, stationery, fragrances, and accessories. It operates through the following geographical segments: Americas, Asia-Pacific, Japan, Europe, and Other. The Americas segment includes in U.S., Canada, Mexico, Brazil, and Chile. The Asia-Pacific segment consists of China, Korea, Australia, Hong Kong, Taiwan, Singapore, Macau, Malaysia, New Zealand, and Thailand. The Japan segment comprises of 50 stores located within department stores. The Europe segment caters to the United Kingdom, Italy, Germany, France, Spain, Switzerland, the Netherlands, Austria, Belgium, the Czech Republic, Ireland, and Russia. The Other segment covers retail sales and wholesale distribution in the emerging markets region, wholesale of diamonds, and licensing agreements. The company was founded in 1837 and is headquartered in New York, NY.

25.     On November 25, 2019, the Company and LVMN jointly announced the Proposed Transaction:

Paris and New York, November 25, 2019 – LVMH Moët Hennessy Louis Vuitton SE ("LVMH"), the world's leading luxury group and Tiffany & Co. (NYSE: TIF) ("Tiffany"), the global luxury jeweler, today announced that the companies have entered into a definitive agreement whereby LVMH will acquire Tiffany for $135 per share in cash, in a transaction with an equity value of approximately €14.7 billion or $16.2 billion.

For more than 180 years, Tiffany has been synonymous with elegance, innovative design, fine craftsmanship and creative excellence. Since 1886, when it established the eponymous diamond ring as an enduring symbol of commitment, Tiffany has stood for love. Its extraordinary diamonds are cherished for generations and its legendary jewelry designs are the ultimate reference in the global jewelry world. Even the Tiffany Blue Box is recognized worldwide as an icon of refinement and desirability.

Founded in 1837 when Charles Lewis Tiffany opened the first store in downtown Manhattan, Tiffany today is the leading luxury brand originated in the United States and delights discerning customers in more than 300 stores around the globe. Nature is not only the source of inspiration for Tiffany's designers, but precious metals and natural gemstones are necessary components for the creation of its designs. Tiffany stood apart in the industry as an early proponent of sourcing these materials with a socially and environmentally responsible rigor. Protecting the environment and respecting human rights continue to be core business principles.

The acquisition of Tiffany will strengthen LVMH's position in jewelry and further increase its presence in the United States. The addition of Tiffany will transform LVMH's Watches & Jewelry division and complement LVMH's 75 distinguished Houses.

Bernard Arnault, Chairman and Chief Executive Officer of LVMH, commented: "We are delighted to have the opportunity to welcome Tiffany, a company with an unparalleled heritage and unique position in the global jewelry world, to the LVMH family. We have an immense respect and admiration for Tiffany and intend to develop this jewel with the same dedication and commitment that we have applied to each and every one of our Maisons. We will be proud to have Tiffany sit alongside our iconic brands and look forward to ensuring that Tiffany continues to thrive for centuries to come."

Roger N. Farah, Chairman of the Board of Directors of Tiffany, commented, "Following a strategic review that included a

thoughtful internal process and expert external advice, the Board has concluded that this transaction with LVMH provides an exciting path forward with a group that appreciates and will invest in Tiffany's unique assets and strong human capital, while delivering a compelling price with value certainty to our shareholders."

Alessandro Bogliolo, Chief Executive Officer of Tiffany, said: "Tiffany has been focused on executing on our key strategic priorities to drive sustainable long-term growth. This transaction, which occurs at a time of internal transformation for our legendary brand, will provide further support, resources and momentum for those priorities as we evolve towards becoming The Next Generation Luxury Jeweler. As part of the LVMH group, Tiffany will reach new heights, capitalizing on its remarkable internal expertise, unparalleled craftsmanship and strong cultural values."

**Approvals and Timing**
LVMH's acquisition of Tiffany has been approved by the boards of directors of both companies and the Tiffany Board of Directors recommends that Tiffany shareholders approve the transaction with LVMH.

The transaction is expected to close in the middle of 2020 and is subject to customary closing conditions, including approval from Tiffany's shareholders and the receipt of regulatory approvals.

**Advisors**
Citi and J.P. Morgan are serving as financial advisors and Skadden, Arps, Slate, Meagher & Flom LLP is serving as legal counsel to LVMH. Centerview Partners LLC and Goldman Sachs Co. LLC are serving as financial advisors and Sullivan & Cromwell LLP is serving as legal counsel to Tiffany.

26.     The Board has unanimously agreed to Proposed Transaction.  It is therefore imperative that Tiffany's stockholders are provided with the material information that has been omitted from the Proxy Statement, so that they can meaningfully assess whether or not the Proposed Transaction is in their best interests prior to the forthcoming stockholder vote.

**B.     The Materially Incomplete and Misleading Proxy Statement**

27.     On December 18, 2019, Tiffany filed the Proxy Statement with the SEC in connection with the Proposed Transaction.   The Proxy Statement was furnished to the

Company's stockholders and solicits the stockholders to vote in favor of the Proposed Transaction. The Individual Defendants were obligated to carefully review the Proxy Statement before it was filed with the SEC and disseminated to the Company's stockholders to ensure that it did not contain any material misrepresentations or omissions. However, the Proxy Statement misrepresents and/or omits material information that is necessary for the Company's stockholders to make an informed decision concerning whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

28.     With respect to the financial projections disclosed in the Proxy Statement, the Proxy Statement fails to provide material information.

29.     For the Company projections (the "Projections"), the Proxy Statement provides values for non-GAAP (Generally Accepted Accounting Principles) financial metrics such as (1) EBITDA; and (2) Unlevered Free Cash Flow, but fails to provide: (i) the line items used to calculate the non-GAAP measures, or (ii) a reconciliation of these non-GAAP metrics to their most comparable GAAP measures, in direct violation of Regulation G and consequently Section 14(a). Proxy Statement at 67.

30.     When a company discloses non-GAAP financial measures in a Proxy Statement that were relied on by a board of directors to recommend that stockholders exercise their corporate suffrage rights in a particular manner, the company must, pursuant to SEC regulatory mandates, also disclose all projections and information necessary to make the non-GAAP measures not misleading, and must provide a reconciliation (by schedule or other clearly understandable method) of the differences between the non-GAAP financial measure disclosed or released with the most comparable financial measure or measures calculated and presented in accordance with GAAP. 17 C.F.R. § 244.100.

31.     The SEC has noted that:

> companies should be aware that this measure does not have a uniform definition and its title does not describe how it is calculated. Accordingly, a clear description of how this measure is calculated, as well as the necessary reconciliation, should accompany the measure where it is used. Companies should also avoid inappropriate or potentially misleading inferences about its usefulness. For example, "free cash flow" should not be used in a manner that inappropriately implies that the measure represents the residual cash flow available for discretionary expenditures, since many companies have mandatory debt service requirements or other non-discretionary expenditures that are not deducted from the measure.[1]

32.     Thus, to cure the materially misleading nature of the forecasts under SEC Rule 14a-9 as a result of the omitted information in the Proxy Statement, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures. At the very least, the Company must disclose the line item forecasts for the financial metrics that were used to calculate the aforementioned non-GAAP measures.  Such forecasts are necessary to make the non-GAAP forecasts included in the Proxy Statement not misleading.

33.     With respect to Centerview's *Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose (i) the basis of choosing a range of discount rates from 7.5% to 8.5%; (ii) the forecasted fully taxed unlevered free cash flows of the Company over the period beginning October 31, 2019 and ending on January 31, 2025; (iii) the range of implied terminal values of the Company; (iv) the basis of choosing the illustrative range of enterprise value to EBITDA multiples of 13.0x to 18.0x; (v) the Company's net debt as of October 31, 2019; and (vi) the Company's number of fully diluted outstanding shares of common stock as of October 31, 2019. Proxy Statement at 55.

---

[1] U.S. Securities and Exchange Commission, Non-GAAP Financial Measures, last updated April 4, 2018, available at: https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm

34.     With respect to Centerview's *Analyst Price Target Analysis*, the Proxy Statement fails to disclose: (i) the individual price targets observed by Centerview in the analysis; and (ii) the sources thereof. *Id.*

35.     With respect to Goldman Sachs' *Illustrative Present Value of Future Share Price Analysis*, the Proxy Statement fails to disclose (i) Goldman Sachs' basis for applying illustrative one-year forward price to EPS multiples ranging from 18.5x to 23.3x to estimates of the EPS of the Company for each of fiscal years 2020, 2021, 2022, 2023, and 2024; and (ii) the inputs underlying the discount rate of 7.4%. Proxy Statement at 59.

36.     With respect to Goldman Sachs' *Premia Paid Analysis*, the Proxy Statement fails to disclose the transactions observed by Goldman Sachs in the analysis as well as the premiums paid in such transactions. Proxy Statement at 60.

37.     With respect to Goldman Sachs' *Illustrative Discounted Cash Flow Analysis*, the Proxy Statement fails to disclose (i) the basis of choosing a range of discount rates from 6.5% to 7.5%; (ii) the forecasted fully taxed unlevered free cash flows of the Company over the period beginning November 1, 2019 to January 31, 2025; (iii) the range of implied terminal values of the Company as of January 31, 2025; (iv) the basis of choosing the illustrative range of eterminal year multiples of 12.0x to 15.0x; (v) the basis of choosing the perpetuity growth rates ranging from 2.4% to 4.2%; (vi) the Company's net debt as of October 31, 2019; and (vii) the Company's number of fully diluted outstanding shares of common stock as of October 31, 2019. Proxy Statement at 63-64.

38.     In sum, the omission of the above-referenced information renders statements in the Proxy Statement materially incomplete and misleading in contravention of the Exchange Act. Absent disclosure of the foregoing material information prior to the special stockholder meeting

to vote on the Proposed Transaction, Plaintiff will be unable to make a fully-informed decision regarding whether to vote in favor of the Proposed Transaction, and she is thus threatened with irreparable harm, warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

## COUNT I

### On Behalf of Plaintiff Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 and 17 C.F.R. § 244.100

39.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

40.     Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that proxy communications with stockholders shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading."  17 C.F.R. § 240.14a-9.

41.     Defendants have issued the Proxy Statement with the intention of soliciting stockholder support for the Proposed Transaction.  Each of the Defendants reviewed and authorized the dissemination of the Proxy Statement and the use of their name in the Proxy Statement, which fails to provide critical information regarding, among other things, the financial projections that were prepared by the Company and relied upon by the Board in recommending the Company's stockholders vote in favor of the Proposed Transaction.

42.     In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading.  Each of the Individual Defendants, by virtue of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a).  The Individual Defendants

were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Proxy Statement, but nonetheless failed to obtain and disclose such information to stockholders although they could have done so without extraordinary effort.

43.     Defendants were, at the very least, negligent in preparing and reviewing the Proxy Statement.  The preparation of a Proxy Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence.  Defendants were negligent in choosing to omit material information from the Proxy Statement or failing to notice the material omissions in the Proxy Statement upon reviewing it, which they were required to do carefully.  Indeed, Defendants were intricately involved in the process leading up to the signing of the Merger Agreement and the preparation and review of strategic alternatives and the Company's financial projections.

44.     The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, who will be deprived of her right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.  Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

45.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

46.     The Individual Defendants acted as controlling persons of Tiffany within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their positions as directors of Tiffany, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Proxy Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of Tiffany, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

47.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

48.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of Tiffany, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same.  The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction.  The Proxy Statement at issue contains the unanimous recommendation of the Board to approve the Proposed Transaction.  The Individual Defendants were thus directly involved in the making of the Proxy Statement.

49.     In addition, as the Proxy Statement sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement.  The Proxy Statement purports to describe the various issues and information that

the Individual Defendants reviewed and considered.  The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

50.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

51.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

52.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in her favor and against the Defendants jointly and severally, as follows:

A.     Preliminarily and permanently enjoining Defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with, consummating, or closing the Proposed Transaction, unless and until Defendants disclose the material information identified above which has been omitted from the Proxy Statement;

B.     Rescinding, to the extent already implemented, the Merger Agreement or any of the terms thereof, or granting Plaintiff rescissory damages;

C.     Directing the Defendants to account to Plaintiff for all damages suffered as a result of their wrongdoing;

D.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

E.      Granting such other and further equitable relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

Dated: December 30, 2019

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

By:  */s/ Gloria Kui Melwani*

Gloria Kui Melwani
270 Madison Avenue
New York, NY 10016
Telephone: (212) 545-4600
Facsimile: (212) 686-0114
Email: melwani@whafh.com

*Attorneys for Plaintiff*